**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

RICHARD LEE GRIFFIN,

        Petitioner,

v.                                    Case No. 8:13-cv-2025-T-36TBM

SECRETARY, DEPARTMENT
OF CORRECTIONS,

        Respondent.

_____/

## ORDER

Petitioner Richard Lee Griffin, a state of Florida inmate proceeding *pro se*, initiated this action by filing a petition for writ of habeas corpus under 28 U.S.C. § 2254 (Dkt. 1).  He challenges his convictions entered by the Circuit Court for the Tenth Judicial Circuit, Polk County, in 2011.  Respondent filed a response (Dkt. 6), in which it raises no challenge to the petition's timeliness.  Griffin filed a reply (Dkt. 8).  Upon review, the petition must be denied.

### PROCEDURAL HISTORY

Griffin was charged with three counts of sexual activity with a child 12 years of age or older but less than 18 years of age while he was in a position of familial or custodial authority over the victim.  (Dkt. 7, Ex. A1.)  A jury convicted Griffin of counts one and two, and found him not guilty of count three.  (Dkt. 7, Ex. A2.)  Griffin was sentenced to thirty years in prison on count one.  (Dkt. 7, Ex. A3.)  On count two, he received a consecutive term of fifteen years in prison, followed by fifteen years of probation.  (*Id.*)  The state

appellate court *per curiam* affirmed Griffin's judgments and sentences.  (Dkt. 7, Ex. B3.)

Griffin subsequently filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850 and memorandum of law in support.  (Dkt. 7, Exs. C1, C2.)  The state court summarily denied numerous claims and allowed Griffin an opportunity to amend two claims that it dismissed as insufficiently pleaded.  (Dkt. 7, Ex. C3.)  Griffin filed an amended postconviction motion and memorandum of law.  (Dkt. 7, Exs. C4, C5.)  The court denied one of Griffin's claims and directed the State to respond to the last remaining claim.  (Dkt. 7, Ex. C6.)  After the State filed its response, the state court entered a final order denying Griffin's postconviction motion.  (Dkt. 7, Exs. C7, C8.)  The state appellate court *per curiam* affirmed the rejection of Griffin's claims.  (Dkt. 7, Ex. E1.)  Griffin also filed a state habeas petition alleging ineffective assistance of appellate counsel.  (Dkt. 7, Ex. F1.)  The state appellate court denied his petition.  (Dkt. 7, Ex. F3.)

## STANDARD OF REVIEW

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this proceeding. *Wilcox v. Florida Dep't of Corr.,* 158 F.3d 1209, 1210 (11th Cir. 1998), *cert. denied,* 531 U.S. 840 (2000).  Habeas relief can only be granted if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Section 2254(d), which sets forth a highly deferential standard for federal court review of a state court adjudication, states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000), the Supreme Court interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied–the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States" or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002).  "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).  *Accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that [the federal court is] to decide.").  The phrase "clearly established Federal law" encompasses only the holdings of the United

States Supreme Court "as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412.

The purpose of federal review is not to re-try the case. "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Cone*, 535 U.S. at 693. In other words, "AEDPA prevents defendants–and federal courts–from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010). *See also Cullen v. Pinholster*, 563 U.S. 170, 131 S. Ct. 1388, 1398 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt' . . . ") (citations omitted).

In *per curiam* decisions without written opinions, the state appellate court affirmed Griffin's judgments and sentences, and the rejection of Griffin's postconviction motion. Additionally, the state appellate court denied Griffin's state habeas petition without comment. These decisions warrant deference under § 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore,* 278 F.3d 1245, 1254 (11th Cir.), *reh'g and reh'g en banc denied,* 278 F.3d 1245 (2002), *cert. denied sub nom. Wright v. Crosby,* 538 U.S. 906 (2003). *See also Richter,* 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."). Review of the state court decision is limited to the record that was before the state court.

*Pinholster,* 131 S. Ct. at 1398.

Griffin bears the burden of overcoming by clear and convincing evidence a state court factual determination. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

### EXHAUSTION OF STATE REMEDIES; PROCEDURAL DEFAULT

Before a district court can grant habeas relief to a state prisoner under § 2254, the petitioner must exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state postconviction motion.  28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition.").  *See also Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003) ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.") (citations omitted).  A state prisoner "'must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process,' including review by the state's court of last resort, even if review in that court is discretionary."  *Pruitt v. Jones*, 348 F.3d 1355, 1358-59 (11th Cir. 2003) (quoting *O'Sullivan*, 526 U.S. at 845).

To exhaust a claim, a petitioner must make the state court aware of both the legal and factual bases for his claim.  *See Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998) ("Exhaustion of state remedies requires that the state prisoner 'fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass on and correct

alleged violations of its prisoners' federal rights.'") (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)).   A federal habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented."   *Pruitt*, 348 F.3d at 1358.  The prohibition against raising an unexhausted claim in federal court extends to both the broad legal theory of relief and the specific factual contention that supports relief. *Kelley v. Sec'y, Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004).

The requirement of exhausting state remedies as a prerequisite to federal review is satisfied if the petitioner "fairly presents" his claim in each appropriate state court and alerts that court to the federal nature of the claim.  28 U.S.C. § 2254(b)(1); *Picara v. Connor*, 404 U.S. 270, 275-76 (1971).  A petitioner may raise a federal claim in state court "by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or simply by labeling the claim 'federal.'" *Baldwin v. Reese*, 541 U.S. 27, 32 (2004).

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established."  *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001).  To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court."  *Wright v. Hopper*, 169 F. 3d 695, 703 (11th Cir. 1999). *See also Murray v. Carrier*, 477 U.S. 478 (1986).  To show prejudice, a petitioner must demonstrate not only that the errors at his trial created the possibility of prejudice but that

they worked to his actual and substantial disadvantage and infected the entire trial with error of constitutional dimensions. *United States v. Frady*, 456 U.S. 152, 167-70 (1982). The petitioner must show at least a reasonable probability of a different outcome. *Henderson*, 353 F.3d at 892; *Crawford v. Head*, 311 F.3d 1288, 1327-28 (11th Cir. 2002).

Alternatively, a petitioner may obtain federal habeas review of a procedurally defaulted claim if review is necessary to correct a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Carrier*, 477 U.S. at 495-96. A fundamental miscarriage of justice occurs in an extraordinary case where a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Henderson*, 353 F.3d at 892. This exception requires a petitioner's "actual" innocence. *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001). To meet this standard, a petitioner must show a reasonable likelihood of acquittal absent the constitutional error. *Schlup*, 513 U.S. at 327.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Claims of ineffective assistance of counsel are analyzed under the test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), which requires a petitioner to demonstrate both deficient performance by counsel and resulting prejudice. Demonstrating deficient performance "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Deficient performance is established if, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id.* at 690. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable

professional judgment." *Id.* Additionally, "a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.*

Griffin must demonstrate that counsel's alleged errors prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691-92. To show prejudice, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Counsel's strategic choices "made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690-91. A petitioner cannot meet his burden merely by showing that counsel's choices were unsuccessful:

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992). *Accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable. But, the issue is not what is possible or 'what is prudent or appropriate, but only

what is constitutionally compelled.'") (en banc) (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)).

Sustaining a claim of ineffective assistance of counsel on federal habeas review is very difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105 (citations omitted). *See also Pinholster*, 131 S. Ct. at 1410 (a petitioner must overcome the "'doubly deferential' standard of *Strickland* and AEDPA.").

If a claim of ineffective assistance of counsel can be resolved through one of the *Strickland* test's two prongs, the other prong need not be considered. 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998) ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds.").

## DISCUSSION

### Grounds One Through Three: Trial Court Error

Griffin asserts trial court error in Grounds One, Two, and Three, but does not raise a federal claim in any of these grounds. Thus, the arguments asserted in Grounds One, Two, and Three are not cognizable in this federal habeas proceeding. *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988). Even liberally construing these grounds to allege federal violations, such claims would be unexhausted because Griffin failed to raise any federal issues when he brought these allegations of trial court error on direct appeal. (Dkt. 7, Ex. B1, pp. 14, 16-24.) Griffin cannot return to state court to file a successive, untimely direct appeal. *See* Fla. R. App. P. 9.140. Thus, any federal claims in Grounds One, Two,

and Three are procedurally defaulted. *See Smith*, 256 F.3d at 1138. Griffin does not establish the applicability of the cause and prejudice or the fundamental miscarriage of justice exception to overcome the default. *See id.* Accordingly, these claims are barred from federal habeas review. Alternatively, even assuming Griffin presented exhausted federal claims in Grounds One, Two, and Three,[1] they are without merit.

**Ground One**

Griffin argues that the trial court erred in denying his motion for judgment of acquittal because the State failed to prove that he was in a position of familial or custodial authority over the victim, who was the daughter of Griffin's girlfriend. Upon moving for a judgment of acquittal, defense counsel argued that the State did not show Griffin was in a position of familial or custodial authority. (Dkt. 7, Ex. A4, pp. 546-48.) In response, the State cited *Oliver v. State*, 977 So.2d 673 (Fla. 5th DCA 2008), for the proposition that a familial relationship is one in which there is a recognizable bond of trust of the victim with the defendant similar to the bond that develops between a child and a grandfather, uncle, or guardian. (*Id.*, p. 549.) The trial court denied Griffin's motion for judgment of acquittal. (*Id.*, p. 550.)

The Due Process Clause of the Fourteenth Amendment prohibits a criminal conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime." *In re Winship*, 397 U.S. 358, 364 (1970). The Supreme Court established the standard of review in a federal habeas corpus proceeding in which a petitioner challenges the sufficiency of the evidence:

---

[1] Respondent does not identify the procedural default of these grounds and states that Griffin has exhausted state remedies with respect to the claims raised in his federal habeas petition.

> We hold that in a challenge to a state criminal conviction brought under 28
> U.S.C. § 2254 – if the settled procedural prerequisites for such a claim have
> otherwise been satisfied – the applicant is entitled to habeas corpus relief if
> it is found that upon the record evidence adduced at the trial no rational trier
> of fact could have found proof of guilt beyond a reasonable doubt.

*Jackson v. Virginia*, 443 U.S. 307, 324 (1979). "[T]his inquiry does not require a court to 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* at 318-19 (quoting *Woodby v. INS*, 385 U.S. 276, 282 (1966)). "[T]he *Jackson* standard of review is '[e]qually applicable to direct or circumstantial evidence.'" *Martin v. Alabama*, 730 F.2d 721, 725 (11th Cir. 1984) (quoting *United States v. Wuagneux*, 683 F.2d 1343, 1358 (11th Cir. 1982)). Sufficiency of the evidence claims are governed by the substantive elements of a criminal offense as defined by state law. *Jackson*, 443 U.S. at 324 n.16. If the record contains facts supporting conflicting inferences, the jury is presumed to have resolved those conflicts in favor of the State and against the defendant. *Id.* at 326.

Testimony presented at trial reflects that Griffin had a relationship with the victim's mother for about eleven years, although there may have been some breaks in the relationship. (Dkt. 7, Ex. A4, pp. 348-49, 460.) The victim's mother testified that Griffin, who worked as a truck driver, stayed with her when he was not on the road. (*Id.*, p. 349.) There was testimony that at some point the victim, who was deaf, spent her weeks at a school for the deaf in St. Augustine but came home for the weekends. (*Id.*, pp. 364-65.) There was also testimony that the victim, who was sixteen when the offenses occurred, went to live with her grandmother when she was fourteen. However, Detective Robbins, who interviewed Griffin after the offenses, testified that Griffin stated he was living with the victim and her mother at the time. (*Id.*, pp. 347-48, 460.) Additionally, the victim

sometimes traveled with Griffin when he was working.  (*Id.*, p. 350.)

Moreover, testimony from the victim and her mother shows that the victim considered Griffin to be her father and referred to him as her dad.  (*Id.*, pp. 195, 349-50.) Evidence of statements at the time of the offenses reflects a similar description of Griffin and the victim's relationship.  The trial transcript reflects that a patrol officer discovered Griffin and the victim in Griffin's car at Saddle Creek Park at about 2:30 a.m. on April 2, 2009.  Griffin was interviewed by police later that day.  The officer who located the victim in Griffin's car also testified that the victim referred to Griffin as her dad.  (*Id.*, p. 168.)[2] Griffin told Robbins, the interviewing officer, that he was a father figure to the victim.  (*Id.*, p. 460.)

The jury was instructed as follows:

> Special instruction.
> A familial relationship is one in which there is a recognizable bond of trust of the victim with the defendant similar to the bond that develops between child and a grandfather, uncle, or guardian.
> Consanguinity and affinity are strong indicia of a familial relationship but are not necessary.

(Dkt. 7, Ex. A4, p. 663.)[3]   Given the testimony concerning Griffin and the victim's relationship and the law provided to the jury, Griffin fails to show that no rational trier of fact could have found proof of guilt beyond a reasonable doubt based upon the evidence presented at trial.  Griffin demonstrates no entitlement to relief on Ground One.

**Ground Three**

---

[2] The officer testified that the victim communicated in writing.  (Dkt. 7, Ex. A4, p. 168.)

[3]The applicable standard jury instruction does not define the term "familial or custodial authority."  *See* Fla. Std. Jury Inst. (Crim.) 11.6.

Griffin asserts that the trial court erred by providing an "incomplete, misleading or confusing" special jury instruction regarding familial or custodial authority.  To the extent this claim is interpreted as alleging a federal due process violation, it must fail.  As addressed in Ground One, the court gave a special jury instruction on the meaning of familial authority.  This instruction was derived from Florida decisions:

> In *State v. Rawls*, 649 So.2d 1350, 1353 (Fla. 1994), the supreme court defined the concept of "familial relationship" in the context of the sexual battery of children. Although the court in that case addressed the concept for the sole purpose of determining whether similar fact evidence was admissible to corroborate the testimony of a minor victim of sexual battery, the definition is nonetheless helpful in deciding whether sufficient evidence of familial or custodial authority has been presented to uphold a conviction under section 794.011(8)(b).  In *Rawls*, the court concluded that the determination of a "familial relationship" must be done on a case-by-case basis.  *Id.* at 1353. The court explained:
>
> > Consanguinity and affinity are strong indicia of a familial relationship but are not necessary. Also, the defendant and victim need not reside in the same home. The relationship must be one in which there is a recognizable bond of trust with the defendant, similar to the bond that develops between a child and her grandfather, uncle, or guardian. Where an individual legitimately exercises parental-type authority over a child or maintains custody of a child on a regular basis, a familial relationship may exist for purposes of the admissibility of collateral crimes evidence....

*Oliver v. State*, 977 So.2d 673, 676 (Fla. 5th DCA 2008).

A claim that a jury instruction was incorrect under state law cannot provide federal habeas relief.  *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991) ("[T]he fact that the instruction was allegedly incorrect under state law is not a basis for habeas relief.")  Rather, "[t]he only question . . . is 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'"  *Id.* (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)).  In addition, "[i]t is well established that the instruction 'may not be judged in

artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." *Id.* (quoting *Cupp*, 414 U.S. at 147).  *See also Jones v. Kemp*, 794 F.2d 1536, 1540 (11th Cir. 1986) ("State court jury instructions ordinarily comprise issues of state law and are not subject to federal habeas corpus review absent fundamental unfairness.").  Griffin does not establish that the instruction on familial authority, which was consistent with Florida law, was erroneous or so infected his trial as to amount to a federal due process violation.  He is not entitled to relief on Ground Three.

**Ground Two**

Griffin argues that the trial court violated due process when it refused to instruct the jury on attempt with respect to count one.  In support, he states that the court gave the attempt instruction on count two, and both counts were derived from the same set of facts during a single criminal episode.

Griffin cannot show entitlement to relief.  Count one alleged that Griffin committed the offense "by penetrating or uniting the mouth of [the victim] with the sexual organ of" Griffin.  (Dkt. 7, Ex. A1, p. 35.)  Count two alleged that Griffin committed the offense "by uniting the vagina of [the victim] with the sexual organ of" Griffin.  (*Id.*) In accordance with the standard jury instruction, Griffin's jury was instructed that "union means contact."  (Dkt. 7, Ex. A4, p. 661.) *See* Fla. Std. Jury Inst. (Crim.) 11.6.

The defense requested a jury instruction on attempted sexual battery on both counts.  The relevant standard jury instruction provides that attempt is a category two, or permissive, lesser-included offense.  *See* Fla. Std. Jury Inst. (Crim.) 11.6.  In Florida, a trial court is not required to give an instruction on attempt unless supported by the evidence. *See* Fla. R. Crim. P. 3.510(a) ("The judge shall not instruct the jury if there is no evidence

to support the attempt and the only evidence proves a completed offense."). Furthermore, a trial court has wide discretion in instructing the jury. *Chesnoff v. State*, 840 So.2d 423, 426 (Fla. 5th DCA 2003).

The trial court granted counsel's request for an attempt instruction with respect to count two, but denied it with respect to count one. The court found that an attempt instruction was not appropriate for count one because there was no evidence of attempt. (Dkt. 7, Ex. A4, p. 600.) As addressed in Ground Three, Griffin cannot obtain relief by demonstrating an error under state law; he must show that an erroneous instruction infected his trial such that it was fundamentally unfair. *See McGuire*, 502 U.S. at 71-72.

The victim testified that Griffin put his penis in her mouth and ejaculated in her mouth. (Dkt. 7, Ex. A4, pp. 201-02, 409-10.) Robbins testified that Griffin said his penis went into the victim's mouth, and that it was possible he ejaculated into her mouth. (*Id.*, p. 462, 514.) On cross-examination, Robbins further testified that when he asked Griffin about whether the victim gave Griffin a "blow job," Griffin indicated that the victim "attempted," "started," and "sort of" did so, and "she was sucking it and all that but she didn't really." (*Id.*, pp. 507, 512, 513.)

The victim also testified that she spit out of the car window after Griffin ejaculated into her mouth. (*Id.*, p. 410.) Testing of bodily fluid found on the side of the car did not reveal semen. (*Id.*, pp. 297-98.) In support of his claim, Griffin argues that the absence of semen shows he only attempted the offense. But the charge did not require a completed sexual act; it only required that his penis penetrated or had union with the victim's mouth.[4]

---

[4] The jury specifically found that "the sexual organ of Richard L. Griffin penetrated the mouth of [the victim]." (Dkt. 7, Ex. A2, p. 82.)

Based on the evidence adduced at trial, Griffin does not establish that the trial court's refusal to give an attempt instruction on count one was erroneous, or that it rendered his entire trial unfair so as to violate due process.  *See McGuire*, 502 U.S. at 71-72.  He is not entitled to relief on Ground Two.

**Ground Four: Trial Court Error and Ineffective Assistance Of Appellate Counsel**

Griffin contends that the trial court violated his due process rights and committed fundamental constitutional error by imposing a harsher sentence based on his failure to show remorse and admit guilt for his crime.  He claims that the court based his sentence "on the observation that: 'He is still not willing to say today, I'm sorry for what I did . . . he cannot get out of his mouth, I hurt this child and I'm sorry.'" (Dkt. 1, p. 7.)  Griffin does not raise a federal claim in his federal habeas petition; rather, he attempts to "federalize" the claim in his reply by stating that the court violated his "Fifth Amendment Right to [sic] self-incrimination, an affront to a persons right to assert his innocence regardless of a disputable guilty verdict."  (Dkt. 8, p. 3.)

Even construing Griffin's claim of trial court error as a claim that the court violated his rights under the Fifth Amendment, it is procedurally defaulted.  Although Griffin's federal habeas petition clearly asserts a claim of trial court error, the Court notes that Griffin presented the factual basis of this claim to the state courts in a claim of ineffective assistance of appellate counsel.  The trial court error claim is unexhausted, as Griffin did not raise it on direct appeal.  (Dkt. 7, Ex. B1.)[5]  Because state procedures do not provide

_____

[5] Respondent does not acknowledge the claim of trial court error; rather, it construes Griffin's federal habeas claim as raising the exhausted claim of ineffective assistance of appellate counsel.  Thus, although Respondent states in the response that "Petitioner has exhausted his state remedies with regard to all grounds raised in the instant habeas petition," this acknowledgment of exhaustion applies to the ineffective assistance of appellate counsel claim.  (Dkt. 6, p. 15.)

for second direct appeals, the claim is procedurally defaulted. *See Smith*, 256 F.3d at 1138.

Griffin does not show the applicability of either the cause and prejudice or fundamental

miscarriage of justice exception to overcome the default.   *See id.*   Alternatively, as

addressed below, Griffin's claim of trial court error is without merit.

As noted, Griffin exhausted a claim of ineffective assistance of appellate counsel for

not arguing on direct appeal that the trial court erred in considering his lack of remorse

during sentencing.   The record reflects that, at the outset of the sentencing hearing,

counsel argued to the court as follows:

> And I think that Mr. Griffin has indicated and has shown remorse.  I think that even his - - his presence today and his body language continues to show that.  That's one of the things I wanted him to talk about.  Which is to indicate to The Court, on his own, that he is remorseful, so that you're not hearing it from me, that you're hearing it from him . . .
>
> But based on the situation, an isolated incident this one particular night or early morning hours, and things that he has said even through trial even when he has been - - even in the letters he has said over and over again, I'm so sorry, I'm so sorry.  So not just sitting here today or standing here today in front of you saying, okay yeah, now I'm sorry.  Even before it got to this point - - of it - - of going to trial, even before testimony came out, in letters to [his girlfriend], he is telling  [his girlfriend] and [the victim] that he is sorry for what happened.  That he is sorry, not I'm sorry I got caught.  I'm sorry you did this to me.  I'm sorry what I did was wrong.  I mean, that was very clear in the letters that the State introduced.

(Dkt. 7, Ex. A5, pp. 106-07.)

The letters to which defense counsel referred were letters Griffin wrote his girlfriend

while he was in pre-trial custody.  The trial transcript reflects that in at least one of the

letters, Griffin apologized to his girlfriend for hurting her.  (Dkt. 7, Ex. A4, pp. 319-21.)

However, the State introduced the letters at trial on the grounds that they reflected Griffin's

consciousness of guilt.[6]

At the sentencing hearing, when defense counsel asked Griffin if he wanted to

address the court, he said, "Sure," and then stated:

> Hi.  I just want - - I just want to say I'm sorry for what I've put everybody
> through.  I know it's been hard on everybody and - - and I'm ashamed of
> what's - - what's - - what has occurred.  I've lost everything that I've worked
> hard to get, over some stupid decisions.  In the meantime, my mother is out
> on the streets dying of cancer and I'm stuck in jail for my actions.  I'm just
> asking for a chance to get - - get my life back together and spend some time
> with my mother before she passes away.  Because she's not going to be
> around much longer.  So I'm just asking for - - for mercy.  And know that I'm
> truly sorry for what all has happened.

(Dkt. 7, Ex. A5, p. 108.)  Prior to pronouncing sentence, the court stated:

> I will, also, put on the record, that - - I mean I can go through the facts of this
> case.  There's a car coming out of Sa[dd]le Creek Park at not two in the
> morning.  He is naked, but for something draped over his private parts.  The
> child is in the backseat trying to get dressed.  This child - - she was 15[7] at
> the time.  She is sitting in the backseat.  She discloses that there is fluid on
> a door and low [sic] and behold there is fluid, not seminal, but it is fluid on the
> door.  She, also, discloses that - - that we have the two incidences of sexual
> contact.  And then he writes mom letters from prison.  Leave town, no
> [victim], no trial.  Those aren't I'm sorry letters.  Those are letters of
> tampering with a witness if you want to know my opinion.
>
> . . .
>
> Okay.  I've read the PSI, I've listened to every bit of that trial. If you had come
> to me with a plea agreement of nine years and five years probation, you
> know I don't get into plea negotiations.  But when you have a trial and I hear
> things about letters and I hear those letters are truly offensive.  They were
> not I'm sorry.  They were I'm sorry, I'm caught.  He's still not willing to say
> today, I'm sorry for what I did to [the victim].  He cannot get out of his mouth,
> I hurt this child and I'm sorry.

---

[6] Griffin argues further in Ground Six that the State introduced the letters to show he wanted his
girlfriend to make the victim unavailable for a trial.

[7] The court later corrected itself, noting that the victim was sixteen years old at the time.

. . .

[W]hat I'm trying to get on the record is that I'm - - this is my sentence because I have no idea whether there were plea negotiations.  I don't really care, but I want to make it clear that I'm appalled at this.  My sentence is not going to be 60 years.  My sentence is going to be 30 years, followed by 15 years on Count Two, which is 45 years, followed by 15 years of Probation, Sexual Offender - - Sexual Predator Probation.

(*Id.*, pp. 113-15.)

In his state habeas petition, Griffin argued that appellate counsel was ineffective for not arguing that, under applicable Florida law, the sentencing court improperly considered lack of remorse.  (Dkt. 7, Ex. F1.)  Claims that appellate counsel provided ineffective assistance are analyzed under the two-part test set forth in *Strickland*.  *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Heath v. Jones*, 941 F.2d 1126, 1130 (11th Cir. 1991).  To establish a claim, Griffin must show that appellate counsel's performance was objectively unreasonable, and that there is a reasonable probability that, but for this performance, Griffin would have prevailed on his appeal.  *Robbins*, 528 U.S. at 285-86.

Appellate counsel cannot be deemed ineffective for failing to raise issues "reasonably considered to be without merit."  *United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000) (quoting *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984)).  Furthermore, appellate counsel is not required to raise every non-frivolous issue on appeal.  *Heath*, 941 F.2d at 1130-31.  Rather, "effective advocates 'winnow out' weaker arguments" even when such arguments may have merit.  *Id.* at 1131.  Appellate counsel may choose to focus on the strongest claims while excluding claims that might have a lower chance of success or detract from stronger arguments.  *See Jones v. Barnes*, 463 U.S. 745, 751-54 (1983).

Because counsel made no objection to the court's alleged consideration of Griffin's lack of remorse, Griffin was required to demonstrate fundamental error in order to bring the claim on appeal. *See Hannum v. State*, 13 So.3d 132, 135 (Fla. 2d DCA 2009) ("[F]or an error to be so fundamental that it can be raised for the first time on appeal, the error must be basic to the judicial decision under review and equivalent to a denial of due process. We must therefore consider whether the trial court's comments at sentencing were so erroneous as to be equivalent to a denial of due process.") (citations and quotation marks omitted). *See also Yisrael v. State*, 65 So.3d 1177, 1177 (Fla. 1st DCA 2011) ("Fundamental error occurs where a trial court considers constitutionally impermissible factors when imposing a sentence."). In Florida, a sentencing court may not consider or use against a defendant his assertion of innocence and refusal to admit guilt. *Bracero v. State*, 10 So.3d 664, 665-66 (Fla. 2d DCA 2009).

In Griffin's state habeas petition, he argued that appellate counsel should have raised this claim of trial court error under Florida law. In reviewing his claim, therefore, the state appellate court has already determined that, under applicable Florida law, the allegation of trial court error would have failed. This Court must defer to the state court's interpretation of its own law. "[A] state court's interpretation of state law . . . binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). *See Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1354-55 (11th Cir. 2005) ("The Florida Supreme Court already has told us how the issues would have been resolved under Florida state law had [petitioner's counsel] done what [petitioner] argues he should have done. . . . It is a 'fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.'") (quoting *Agan v. Vaughn*,

119 F.3d 1538, 1549 (11th Cir. 1997)).

Additionally, even if Griffin's ineffective assistance of counsel argument could have been interpreted as alleging that counsel was ineffective for not bringing the specific Fifth Amendment claim Griffin now asserts in the federal habeas petition, he fails to show entitlement to relief.  The Eleventh Circuit Court of Appeals has stated:

> During sentencing, a court "may not weigh the exercise of [Fifth Amendment] rights against the defendant." *United States v. Rodriguez*, 959 F.2d 193, 197 (11th Cir. 1992) (per curiam).  But a court may take into account a defendant's freely offered statements indicating a lack of remorse.  *See id.* ("The sentencing court is justified in considering the defendant's conduct prior to, during, and after the trial to determine if the defendant has shown any remorse through his actions or statements.") *cf. United States v. Barrington*, 648 F.3d 1178, 1197 (11th Cir. 2011), *cert. denied*, – U.S. –, 132 S.Ct. 1066, 181 L.Ed.2d 781 (2012); *United States v. Hill*, 643 F.3d 807, 882-83 (11th Cir. 2011), *cert. denied*, – U.S. –, 132 S.Ct. 1988, 182 L.Ed.3d 833 (2012); *United States v. Mateos*, 623 F.3d 1350, 1367 (11th Cir. 2010).  Just as a jury weighs a defendant's testimony once he waives his Fifth Amendment privilege at trial, a judge may consider a defendant's freely offered allocution regarding remorse during sentencing.

*United States v. Stanley*, 739 F.3d 633, 652 (11th Cir. 2014).

Griffin fails to establish that the sentencing court impermissibly weighed the exercise of his Fifth Amendment privilege against him.  Griffin told the court he was sorry for "what [he has] put everybody through" and "what all has happened."  Additionally, defense counsel made specific argument about Griffin's remorse in support of her argument for a sentence at the lower end of the sentencing guidelines.  Griffin does not establish that the court was not permitted to take into account Griffin's statement in considering his request for leniency in sentencing.

Moreover, while the record of the sentencing hearing reflects that the court considered the evidence introduced at trial in imposing sentence, there is no indication that

any belief by the court that Griffin lacked remorse affected the sentence imposed.  Griffin fails to establish that the sentencing court violated Griffin's Fifth Amendment privilege against self-incrimination by impermissibly considering his lack of remorse in imposing sentence.  Therefore, Griffin fails to establish that counsel was ineffective for not raising this assertion of trial court error on direct appeal.   And for the same reasons, notwithstanding the default of his claim of trial court error, Griffin fails to demonstrate entitlement to relief on the basis that the trial court violated his Fifth Amendment rights in sentencing him.[8]

Griffin does not show that the state appellate court's rejection of his claim of ineffective assistance of appellate counsel was an unreasonable application of clearly established federal law or was based on an unreasonable determination of the facts.  Nor does he establish trial court error.  Ground Four warrants no relief.

### Grounds Five Through Twelve: Ineffective Assistance Of Trial Counsel

### Ground Five

Griffin argues that counsel was ineffective for failing to file a pre-trial motion to suppress his statements to police on the basis that they were obtained in violation of his Fifth Amendment privilege against self-incrimination.  In support, Griffin contends that he was initially detained in a police car for five hours, from 2:30 a.m. to 7:30 a.m., "without anything to drink, access to any restroom, or permitted to smoke a cigarette."  (Dkt. 1, p. 11.)  He also states that he was interviewed at the police station about eight hours after his

---

[8] Griffin clarified his claim in the reply to allege a violation of his Fifth Amendment privilege against self-incrimination. To the extent Griffin initially raised a more general due process claim, he has not elaborated on such a claim or provided any authority in support of such an allegation. He fails to show entitlement to relief on any of the grounds raised.

initial detention.   Furthermore, Griffin states, Detective Robbins recorded the interview without Griffin's knowledge.

The record reflects that about 2:30 a.m. on April 2, 2009, a patrol officer located Griffin and the victim inside Griffin's car at Saddle Creek Park.  (Dkt. 7, Ex. A4, pp. 164-67.)  Griffin at some point was placed in the back of a police car; Robbins, who arrived at about 5:30 a.m., testified that Griffin was in the back of a police car when he first made contact with Griffin at about 7:30 a.m.  (*Id.*, pp. 453-56.)   Robbins did not believe Griffin was handcuffed at this time.  (*Id.*, pp. 472, 533.)  Robbins read Griffin his *Miranda*[9] rights, and asked if Griffin understood each right.  (*Id.*, p. 456-57.)  During this time period, Griffin was permitted to get out of the car, stretch, smoke a cigarette, and go to the bathroom.  (*Id.*, p. 457, 473, 537-38.)

Griffin was transported to Robbins' office; this location was also described as a police station at the Bartow Air Base.  (*Id.*, pp. 457, 511.)  Robbins believed that Griffin was given a glass of water upon arrival at the station.  (*Id.*, p. 534-35.)   Robbins began interviewing him about 10:45 a.m.  (*Id.*, p. 464.)  Another officer, Detective Tanner, was also present.  (*Id.*, p. 471.)  Griffin said that he remembered the rights Robbins read him earlier, and signed a *Miranda* waiver form.  (*Id.*, pp. 457-58.)

During the interview at the police station, Griffin made incriminating statements to Detective Robbins.  Robbins did not tell Griffin that Robbins recorded the statement on a device in his shirt pocket.  (*Id.*, pp. 476-77.)  At the conclusion of the interview, Robbins informed Griffin that he was under arrest.  (*Id.*, p. 531.)

_____

[9] *Miranda v. Arizona*, 384 U.S. 436 (1966).

The state court rejected the allegation of ineffective assistance of counsel when Griffin raised it in his postconviction motion:

> In claim 1, Defendant argues that trial counsel should have moved to suppress his statements to the police because he was kept in a police vehicle for eight hours and then secretly taped. Defendant has not set forth facts that tend to show that a Motion to Suppress would have been viable. Defendant was detained in a police vehicle for several hours, then allowed to use the restroom and smoke, then transported to the police station, and questioned. Defendant was read his Miranda rights prior to questioning. It was also established that the Defendant was not threatened or promised anything to get him to speak to the officer. Additionally, the Court finds that the Defendant does not have a reasonable expectation of privacy in a police station and that he may be tape recorded without knowledge. The Court finds that had a Motion to Suppress been filed, it likely would not have been granted. **Claim 1 is DENIED**.

(Dkt. 7, Ex. C3) (court's record citations omitted) (emphasis in original).

"[A] defendant in a criminal case is deprived of due process of law if his conviction is founded, in whole or in part, upon an involuntary confession." *Jackson v. Denno*, 378 U.S. 368, 376 (1964). "The applicable standard for determining whether a confession is voluntary is whether, taking into consideration the totality of the circumstances, the statement is the product of the accused's free and rational choice." *Leon v. Wainwright*, 734 F.2d 770, 772 (11th Cir. 1984) (internal quotation marks omitted).

In determining whether the waiver of the privilege against self-incrimination is voluntary:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the totality of the circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.

*Moran v. Burbine*, 475 U.S. 412, 421 (1986) (quotation marks and citation omitted).

Griffin does not allege that he did not understand the rights he was abandoning by speaking with the police.  He raises no challenge to the validity of the *Miranda* warnings given to him or of the written waiver form he signed.  Rather, Griffin appears to claim that his statement was involuntary because it was not the product of a free and deliberate choice.

Factors relevant to determining the voluntariness of a statement may include "the length of detention . . . and the use of physical punishment such as the deprivation of food or sleep."  *Waldrop v. Jones*, 77 F.3d 1308, 1316 (11th Cir. 1996) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973)).  However, Griffin does not show that his statement was involuntary based upon the conditions or length of his detention.  As Griffin acknowledges, he was permitted to exit the police car to use the restroom, move about, and smoke a cigarette while detained at the scene.  Robbins also believed that Griffin was given water upon arriving at the police station.  *See United States v. Ransfer*, 749 F.3d 914, 935 (11th Cir. 2014) (rejecting claim that statements were not voluntary because appellants were held for more than twenty-four hours and subject to coercion and noting that a statement has been held voluntary even though the suspect was detained for questioning for five days).

Moreover, when Robbins interviewed him at the police station, Griffin indicated that he remembered the *Miranda* warnings given to him and signed a waiver form.  (Dkt. 7, Ex. A4, p. 457-58.)  Griffin told Robbins that he was telling the truth, that he did not feel threatened or coerced into making his statement, and that he was speaking of his own free will.  (*Id.*, pp. 465-66.)  Under the totality of the circumstances, Griffin fails to show that his

confession was not voluntary as a result of the conditions or length of his detention. Consequently, he does not demonstrate that counsel was ineffective for not moving to suppress his statement as involuntary due to the circumstances of his detention.

Griffin makes a vague argument that his statement was involuntary and obtained in violation of his Fifth Amendment rights because he was unaware that it was recorded. However, Griffin cites no authority in support of his claim and does not clearly articulate a valid basis upon which counsel could have brought a motion to suppress his statements. The Court notes that no part of *Miranda* requires that an in-custody individual be told his statement may be recorded.   As addressed above, Griffin told Robbins that he was providing his statement freely and voluntarily.

To the extent Griffin argued he had an expectation of privacy in his statement, the postconviction court found that any motion to suppress would have been denied because Griffin had no reasonable expectation of privacy inside the police station and therefore could be taped without his knowledge.  Griffin cited only Florida law in support of his claim; this Court must defer to the state court's interpretation of its own laws and its determination that under Florida law, a motion to suppress Griffin's statement based on law enforcement's recording it without his knowledge would have failed.  *See Bradshaw*, 546 U.S. at 76; *Herring*, 397 F.3d at 1354-55.[10]

---

[10]The Court notes that at least one of the cases cited by Griffin in state court in addressing his claim of secretive taping of his statement cites the Fourth Amendment. *Williams v. State*, 982 So.2d 1190, 1194 (Fla. 4th DCA 2008).   Electronic interception of conversations without a warrant may violate the Fourth Amendment's protection against unreasonable searches and seizures. "[B]ecause society recognizes as reasonable an expectation of privacy for confidential conversations between individuals, the government needs a warrant to intercept or record such conversations." *Gennusa v. Canova*, 748 F.3d 1103, 1110 (11th Cir. 2014).

Although Griffin was not formally arrested until the end of the interview, he was in police custody.  A detainee's expectations of privacy "'necessarily [are] of a diminished scope.'" *Maryland v. King*, __ U.S. __, 133 S.Ct. 1958, 1978 (2013) (quoting *Bell v. Wolfish*, 441 U.S. 520, 557 (1979)). While an individual's location

In sum, Griffin does not demonstrate that counsel was ineffective for not moving to suppress his statement due to law enforcement's recording it without his knowledge.  Griffin fails to show that the state court's rejection of his claim was contrary to, or an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of the facts.  Ground Five warrants no relief.

**Ground Six**

Griffin asserts that counsel was ineffective for failing to move to suppress letters Griffin wrote to his girlfriend, and for failing to contemporaneously object to their admission for purposes of showing consciousness of guilt.  Griffin claims that the letters were introduced at trial to show that he initiated an attempt to have his girlfriend take the victim to another state to make her unavailable to testify at trial.  He argues, however, that he only wrote these letters in response to letters his girlfriend sent him showing that she proposed such actions.  Therefore, he asserts, counsel also should have moved to introduce the letters written by his girlfriend "to contradict the state's theory."  (Dkt. 1, p. 13.)  The state court denied this claim:

> In claim 2, Defendant argues that trial counsel should have moved to suppress the letters written by Defendant to [his girlfriend] as they were in response to [his girlfriend]'s letters.  Defendant claims that the letters would have established that the victim and [his girlfriend] supported Defendant and that they were going to attempt to avoid testifying in the case against Defendant.

---

is relevant, the key inquiry "'is whether the government's activities in electronically listening to and recording the conversations violated privacy upon which [the participants] justifiably relied.'" *Gennusa*, 748 F.3d at 1114 (quoting *United States v. Shields*, 675 F.2d 1152, 1158 (11th Cir. 1982)).  Griffin was taken into custody at the scene, was given *Miranda* warnings, was transported by police to the police station, said he remembered the warnings and signed a *Miranda* waiver form, and agreed to talk to two officers at the police station.  Griffin does not establish he had any reasonable expectation of privacy during the police interview.  Griffin does not demonstrate any Fourth Amendment basis upon which counsel could have moved to suppress his statements, and thus fails to establish ineffective assistance of counsel for not raising such a claim.

The Court finds that even if the letters written by Defendant were in response to [his girlfriend]'s letters, Defendant's letters would still be admissible as evidence of consciousness of guilt based on what is contained in the letters.  Defendant also claims that if [his girlfriend]'s letters had been admitted or used in a Motion to Suppress hearing, they would have shown that Defendant's letters did not establish consciousness of guilt.  Defendant has failed to state how [his girlfriend]'s letters would be admissible.  Also, [his girlfriend] testified that there was some talk of her leaving for Minnesota and not being available to testify.  Tr. 363; 371-386.  Based on the above, the Court finds that a Motion to Suppress would not have been granted in this case.   The Court held that the letters were relevant after a lengthy discussion.  Tr. 317-343.  **Claim 2 is DENIED**.

(Dkt. 7, Ex. C3) (emphasis in original).

Preliminarily, although counsel did not file a motion to suppress the letters, she did argue that they should be excluded and that it was Griffin's girlfriend who discussed potentially leaving the state.  The court addressed the letters' admissibility at a break during trial.[11]  The trial court indicated that the letters contained an admission of guilt and further stated: "I think every one of these is consciousness of guilt. . . . they, en masse, are certainly consciousness of guilt.  Keep it secret, destroy this letter, don't let the State know it, don't tell the State anything.  If you and [the victim] don't talk, there's no case. . . ."  (Dkt. 7, Ex. A4, p. 326.)

During argument about the letters' admissibility, counsel asserted that Griffin's girlfriend discussed these issues with counsel and made statements suggesting she and

---

[11]The court indicated that one of the letters from Griffin stated, "Destroy these letters so the state won't get them." (Dkt. 7, Ex. A4, p. 324.)  Another letter stated, "Remember, all the state can do is threaten you.  They can't make you do anything.  Without you and [the victim] talking, the state doesn't have anything." (*Id.*, pp. 324-25.)  The trial court further noted that the letters stated,"I know I done wrong.  I'm begging you to reconsider going to trial." (*Id.*, pp. 338-40.)  During Griffin's girlfriend's testimony, other quotations from the letters were read.  They include: "Please forgive me.  I know it was wrong, but I can't do anything about it now"; "Please help me.  Don't let the state know about this letter, okay, I don't want to get in trouble"; and "I will admit I was wrong that night, but I can't take that night back.  I will regret that for the rest of my life.  I wasn't thinking that night and I know it looked real bad." (*Id.*, pp. 377, 378, 383-84.)

the victim were going to leave Florida.  (*Id.*, pp. 325, 327, 329.)  Counsel argued the letters

were "not Richard Griffin telling you what to do" and that the letters only confirmed the

information Griffin's girlfriend told counsel, who relayed it to Griffin.  (*Id.*, pp. 327, 331.)

Moreover, counsel objected to having any portion of the letters admitted into evidence

because they could be incorrectly interpreted as Griffin telling his girlfriend what to do with

respect to the case.  (*Id.*, p. 334.)  The  court excluded one letter but allowed the remaining

letters to be introduced, stating that, "taken as a whole, I think that they're consciousness

of guilt."  (*Id.*, pp. 342-43.)  Contrary to Griffin's argument, counsel contemporaneously

renewed her objection to the letters' introduction during the testimony of his girlfriend.  (*Id.*,

p. 353.)

Counsel's objections to the letters' introduction was unsuccessful.  Griffin does not

show that filing a motion to suppress or moving to introduce the alleged letters from his

girlfriend would have yielded a different result.  The postconviction court determined that

even if Griffin's letters were written in response to letters from his girlfriend, his letters still

would have been admissible to show his consciousness of guilt.  In Florida, "[e]vidence of

a defendant's acts or statements calculated to defeat or avoid his prosecution is admissible

against him as showing consciousness of guilt." *Brown v. State*, 391 So.2d 729, 730 (Fla.

3d DCA 1980).  The postconviction court concluded that a motion to suppress would have

failed, because Griffin's letters were admissible on this basis.  This Court must defer to the

state court's determination. *See Bradshaw*, 546 U.S. at 76; *McGuire*, 502 U.S. at 67-68

("[I]t is not the province of a federal habeas court to reexamine state-court determinations

on state-law questions.").  *See also Sims v. Singletary*, 155 F.3d 1297, 1312 (11th Cir.

1998) ("We will not grant federal habeas corpus relief based on an evidentiary ruling unless

the ruling affects the fundamental fairness of the trial.").

Finally, to the extent Griffin's claim relies on the letters allegedly written by his girlfriend, it is too speculative to support his argument.  Griffin asserts that these letters were in his possession.  (Dkt. 1, p. 13.) However, Griffin has not produced any letters written by his girlfriend to support his claim.  There is no mention of letters written by his girlfriend during the parties' argument before the trial court. (Dkt. 7, Ex. A4, pp. 316-43.) Counsel said his girlfriend did not "write him back," (*Id.*, p. 325), and did not disagree when the court sought to confirm that "this is one-way correspondence from him to her." (*Id.*, p. 327).  Accordingly, Griffin's unsubstantiated assertion cannot provide relief.  *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (vague, conclusory, or unsupported allegations cannot support an ineffective assistance of counsel claim).  Griffin fails to establish ineffective assistance of counsel on the bases alleged.

Griffin does not show that the state court unreasonably applied clearly established federal law or unreasonably determined the facts in denying his claim.  Consequently, Ground Six warrants no relief.

**Ground Seven**

Griffin claims that counsel was ineffective for failing to ensure that he was present during the entirety of jury selection.  He claims that the jury venire was questioned before he entered the courtroom.  Therefore, he asserts, he "had no input into whether he felt he was getting a jury who would try his case fairly, as he was not present during most of the voir dire that took place between counsel(s) and the prospective jurors." (Dkt. 1, p. 14.)

When Griffin raised this claim in his postconviction motion, the state court denied it, stating, "the Court finds that the Defendant was present during jury selection as he was

introduced as a party to the jury.  Tr. 48.  The panel had not been interviewed outside of the Defendant's presence.  Tr. 38-48."  (Dkt. 7, Ex. C3.)

These are factual findings that are presumed correct.  *See* 28 U.S.C. § 2254(e)(1). Griffin does not overcome this presumption of correctness. Moreover, these findings are supported by the record.  The trial transcript reflects that immediately after the jury venire entered the courtroom, the court gave opening instructions to the prospective jurors.  (Dkt. 7, Ex. A4, pp. 37-44.)  The court then called thirteen prospective jurors to be seated in the jury box for *voir dire*, read the charging document, and provided more introductory instructions.  (*Id.*, pp. 44-47.)  At this point, one prospective juror indicated that she believed she knew a former student named Richard Griffin.  The court said, "Is it - - did you look across the court?  Do you see someone you know?  That's Mr. Griffin. . . . If it is Mr. Griffin you taught, that is Mr. Griffin over there."  (*Id.*, p. 48.)  Very shortly afterward, the court stated, "The Defendant is Mr. Richard Lee Griffin.  Mr. Griffin, would you please rise." (*Id.*)

Thus, the record reflects that Griffin was present in the courtroom at the beginning of jury selection.  There is no indication from the transcript that he entered the courtroom only after the jury venire entered.  The transcript of jury selection provides no indication that Griffin later left the courtroom while the proceedings were ongoing.  And when the jury was selected, Griffin answered, "Yes, ma'am," when the court asked whether the jury was acceptable to him.  (*Id.*, p. 125.)

Griffin has not shown ineffective assistance of counsel on the basis alleged.  He does not establish that the state court's ruling was an unreasonable application of clearly established federal law, or based on an unreasonable determination of the facts.  Griffin

is not entitled to relief on Ground Seven.

**Ground Eight**

Griffin claims that counsel was ineffective for not objecting to the court's failure to administer an oath to the jury venire requiring them to answer *voir dire* questions truthfully.[12]   More specifically, in the memorandum of law in support of his amended postconviction motion, he alleged prejudice in that: 1) Juror Miller, a speech and language pathologist, "may have some unearthed prejudice and/or sympathy" for the victim; 2) Juror Hughes, a high school teacher, "would naturally possess an inborn kinship for a teenage victim near the same age as the students he oversees"; 3) Juror Craven, who worked for the Polk County Schools, was "never asked if she ever had any contact with [the] victim during her tenure"; and 4) Juror Herber had a daughter who "teaches children with learning disabilities (special education) in Polk County Schools."  (Dkt. 7, Ex. C5, pp. 2-3.)

The state court denied this claim:

> In amended claim 3b, Defendant argues that the Court failed to swear in the prospective jurors.  Because of the Court's omission, the prospective jurors were not required to answer truthfully.  In his memorandum of law, Defendant raises several concerns that he had with prospective jurors. Despite the Defendant's concerns with the prospective jurors listed, they were not questioned on the subjects mentioned.  Ms. Miller was never asked about her prejudice or sympathy for hearing impaired victims.  Mr. Hughes was never asked about his kinship with teenagers because of his position as a teacher.  Ms. Craven was never asked if she had any contact with the victim as an employee of the Polk County School System.  Ms. Herber was never asked if she had any bias towards children with learning disabilities based on her daughter's employment.   Therefore, the credibility or truthfulness of these four prospective jurors as to the issues advanced by the Defendant is not an issue in this case.  Defendant has failed to establish prejudice.  Claim 3b is DENIED.

---

[12] Florida Rule of Criminal Procedure 3.300(a) sets forth the form of oath for prospective jurors.

(Dkt. 7, Ex. C6) (court's record citations omitted).

The record does not show that the venire panel was sworn before answering questions. (Dkt. 1, Ex. A4, pp. 38-47.)  The postconviction court determined that because the individuals who were chosen for the jury did not provide any responses about the topics Griffin identified, they could not have answered untruthfully with regard to these matters. Griffin makes no specific argument, and presents no evidence, that any juror selected for his case was biased or provided untruthful answers during *voir dire*.[13]  Instead, he makes speculative assertions based upon the experience or profession of these jurors or their family members.  Such speculation cannot sustain Griffin's ineffective assistance of counsel claim.  *See Tejada*, 941 F.2d at 1559.

In addition, the jury venire indicated that they did not have bias for or against either party, and that they understood the requirement to make a fair and impartial decision.  (Dkt. 7, Ex. A4, p. 52.)  The jury venire stated that they would not have feelings of sympathy for a deaf witness.  (*Id.*, pp. 92-93.)  To the extent Griffin argues that counsel did not ask Miller or Craven proper questions to uncover any bias, he is not entitled to relief.  The victim testified with the assistance of sign language interpreters.  In addition to the above answers given by the jury panel, Miller indicated that although she knew some American Sign Language, she would rely on the interpreter's interpretation.  (*Id.*, pp. 82-83.)  And while Griffin argues that counsel did not ask Craven about possible interaction with the victim at her job, none of the prospective jurors indicated that he or she knew the victim when asked

---

[13] In addition, Griffin cannot show prejudice because he fails to establish that any biased juror sat on the jury.  See *United States v. Chandler*, 996 F.2d 1073, 1102 (11th Cir. 1993) (in order to challenge a juror for cause, a party "must demonstrate that the juror in question exhibited actual bias by showing either an express admission of bias or facts demonstrating such a close connection to the present case that bias must be presumed.").

by the court.  (*Id.*, p. 50.)  Griffin offers no evidence that any answers provided by the jury

venire as a whole, or these two jurors in particular, were untruthful.  Accordingly, he fails

to establish prejudice as a result of counsel's performance.

Griffin also claims counsel's failure to object had "jurisdictional implications" because

"under Rule 3.191(c), Fla.R.Crim.P., (the Speedy Trial Rule), it is determined that a 'trial'

in Florida does not 'commence' until the venire is sworn on their voir dire prior to

examination."  (Dkt. 1, p. 15.)  This aspect of the claim is presumed to be denied, even

though the state court did not expressly discuss it in its denial of Griffin's ineffective

assistance of counsel claim.  *See Richter,* 562 U.S. at 99 ("When a federal claim has been

presented to a state court and the state court has denied relief, it may be presumed that

the state court adjudicated the claim on the merits in the absence of any indication or state-

law procedural principles to the contrary.").

Furthermore, this assertion rests upon an interpretation of state law to which this

Court must defer.[14]  *See Will v. Sec'y, Dep't of Corr.*, 278 Fed. App'x 902, 908 (11th Cir.

2008) ("Although an ineffective-assistance-of-counsel claim is a *federal* constitutional claim,

which we consider in light of the clearly established rules of *Strickland*, when 'the validity

of the claim that [counsel] failed to assert is clearly a question of *state* law, . . . we must

defer to the state's construction of its own law.'") (citing *Alvord v. Wainwright*, 725 F.2d

1282, 1291 (11th Cir. 1984)).  And, as Griffin's argument acknowledges, the definition of

commencement of trial on which he relies is relevant to determining whether a trial has

commenced within the speedy trial time period.  *Moore v. State*, 368 So.2d 1291, 1292

---

[14]The argument raised by Griffin concerns the calculation of speedy trial time periods under Florida's procedural rules, not the Sixth Amendment right to a speedy trial.

(Fla. 1979) (citing *Stuart v. State*, 360 So.2d 406 (Fla. 1978)).  There is no indication that Griffin exercised his right to a speedy trial in this case.  In addition, Griffin cites no authority providing that a lack of oath on the record affected the trial court's jurisdiction.  Griffin fails to show counsel provided ineffective assistance by not objecting to the lack of an oath by the jury venire.

Griffin does not show that the state court unreasonably applied clearly established federal law or unreasonably determined the facts in rejecting his claim.  Ground Eight warrants no relief.

**Ground Nine**

Griffin claims that counsel was ineffective for failing to ensure a "gender-neutral" jury.  He asserts, and the record indicates, that the jury of five women and one man was selected from thirteen prospective jurors, eleven of whom were women.  Griffin states that he could not receive a fair trial before a jury comprised primarily of women because he was a man charged with engaging in sexual activity with a female minor.  The state court denied Griffin's claim of ineffective assistance of counsel:

> As to Defendant's claim that there were not enough males seated on the jury panel, the rule is that although petit juries must be drawn from a source fairly representative of the community, there is no requirement that the juries chosen must mirror the community and reflect the various distinctive groups in the population.  State v. Riechmann, 777 So.2d 342, 353 (Fla. 2000).  Claim[ ] . . . 3c [is] denied.

(Dkt. 7, Ex. C3.)

To the extent Griffin argues in support of his ineffective assistance claim that there were simply not enough potential male jurors from which to choose a fair and impartial jury to hear his case, he does not show entitlement to relief because he does not identify a

basis upon which counsel could have objected.  He does not show that the state court failed to comply with the requirement stated by the Florida Supreme Court in *Riechmann*, 777 So.2d at 353, n. 14, that the jury panel be drawn from a source fairly representative of the community.  *See also Taylor v. Louisiana*, 419 U.S. 522, 538 (1975) ("[P]etit juries must be drawn from a source fairly representative of the community. . ."); *United States v. Henderson*, 409 F.3d 1293, 1305 (11th Cir. 2005) (a defendant's Sixth Amendment right to a fair trial includes "the presence of a fair cross-section of the community on venire panels, or lists from which grand and petit juries are drawn.").

Applicable Florida law provides that a jury venire is to be randomly drawn from a list of prospective jurors in the county.  §§ 40.011, 40.221, 40.225, Fla. Stat. (2010).  Griffin points to no evidence that this procedure was not followed.  It appears that the court called thirteen prospective jurors to the jury box while other prospective jurors remained elsewhere in the courtroom, but Griffin does not argue or demonstrate that these thirteen individuals were chosen in an impermissible manner.  Therefore, Griffin does not establish a basis upon which counsel could have objected to the composition of the jury venire or the jury.

Griffin also asserts that counsel was ineffective because she "knew or should have known that [Griffin] could not get a fair determination of these issues before a jury that was comprised of mostly female jurors, but she made no effort to even the bar by using her preemptory strikes to eliminate at least some of the initial female jurors to get to the remaining prospective jurors in the audience, where it would have improved her ability to seat a more gender friendly jury panel."  (Dkt. 1, p. 16.)  This specific assertion was not raised in Griffin's postconviction motion. (Dkt. 7, Ex. C1, pp. 6-8; Ex. C2, pp. 7-11.)  Thus,

it was not properly presented to the state courts and is procedurally defaulted.[15]

Even considering this allegation, it affords Griffin no relief. "[T]he Equal Protection Clause prohibits discrimination in jury selection on the basis of gender, or on the assumption that an individual will be biased in a particular case for no reason other than the fact that the person happens to be a woman or happens to be a man." *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 146 (1994); *see also Abshire v. State*, 642 So.2d 542 (Fla. 1994). Griffin claims that counsel should have stricken prospective jurors simply because they were women, contrary to *J.E.B.* Counsel was not ineffective for not doing so.

Griffin asserts that "the prejudice became apparent where the panel selected consisted of jurors who worked with children, e.g. teachers, social workers, and handicapped/impaired children (the victim in this case was deaf)." (Dkt. 1, p. 16.) Griffin's claim of prejudice was not properly presented to the state court in his claim of ineffective assistance with respect to the jury composition, and is procedurally defaulted. (Dkt. 7, Ex. C1, pp. 6-8; Ex. C2, pp. 7-11.)[16] Even if considered in support of his allegation that counsel should have ensured a better balance of men and women on the jury venire and the jury, however, it is without merit. Griffin is confusing the jurors' gender and their employment positions. Further, as he makes only a generalized, conclusory statement with regard to prejudice, the claim is too speculative to warrant relief. *See Tejada,* 941 F.2d at

---

[15] When a petitioner raises an ineffective assistance of counsel claim in state court, but alleges different supporting facts for the same claim in his federal habeas petition, he fails to fairly present the federal claim to the state court. *Anderson v. Harless*, 459 U.S. 4, 6 (1982); *Weeks v. Jones*, 26 F.3d 1030, 1044-46 (11th Cir. 1994). Griffin cannot return to state court to file an untimely, successive postconviction motion. *See* Fla. R. Crim. P. 3.850(b), (h). This results in a procedural default of this aspect of Griffin's claim. *See Smith*, 256 F.3d at 1138. He does not establish the applicability of either exception to overcome the default. *See id.*

[16] *See Anderson*, 459 U.S. at 6; *Weeks*, 26 F.3d at 1044-46. Griffin does not establish an exception to overcome the procedural default of the claim.

1559.  Griffin presents no evidence that any juror was actually biased.  Nor does he show

any reasonable probability that the outcome of the proceedings would have been different

had counsel objected to the number of men on the jury venire or jury.

In sum, Griffin does not meet either prong of *Strickland*.  He does not show that the

state court's rejection of his claim was contrary to or an unreasonable application of clearly

established federal law, or was based on an unreasonable determination of the facts.

Griffin is not entitled to relief on Ground Nine.

**Ground Ten**

After the State rested, counsel moved for a judgment of acquittal. She argued that

the State failed to prove Griffin was in a position of familial or custodial authority over the

victim.  (Dkt. 7, Ex. A4, pp. 546-49.)  Counsel conceded she did not have case law to

support her position under the circumstances of Griffin's case.  (*Id.*, p. 549.)  In response

to the motion, the State cited *Oliver*, 977 So.2d 673, which describes a familial relationship

as one involving a recognizable bond of trust between a victim and defendant.  The court

denied the motion for judgment of acquittal.  (*Id.*, p. 550.)  Griffin states that counsel was

ineffective for failing to research and prepare a legally sufficient motion for judgment of

acquittal that would have raised a meritorious issue.

The state court rejected this claim when Griffin raised it in his postconviction motion:

> In claim 4, Defendant argues that trial counsel was ineffective for
> failing to present case law during her motion for judgment of acquittal.
> Defendant argues that trial counsel should have presented case law that
> establishes he did not have a familial relationship with the victim.  The case
> law cited in Defendant's motion does not support his argument.  The case
> law cited by Defendant in his memorandum stands for the proposition that a
> court must make the determination on a case by case basis.  In this case, the
> Court found that the State had established that the Defendant was in a
> familial relationship with the victim. [Griffin's girlfriend] and the victim testified

that Defendant was referred to as dad and that he was like a father to the victim.  Defendant, in his taped statement to the police, stated that he was like a father to her.  **Claim 4 is DENIED.**

(Dkt. 7, Ex. C3) (court's record citations omitted) (emphasis in original).

Griffin contends that counsel's "lack of diligence in researching and preparing" the motion was deficient performance.  (Dkt. 1, p. 17.)  However, in his federal habeas petition, Griffin cites no authority to support the contention that he was not in a position of familial or custodial authority over the victim.[17]  He fails to identify what additional argument counsel should have presented in support of the motion. Thus, Griffin fails to show deficient performance or resulting prejudice.

Griffin also alleges that prejudice as a result of counsel's ineffective assistance during the hearing on the motion for judgment of acquittal was shown with respect to counsel's alleged improper questioning of the victim on count three.  During argument on the motion for judgment of acquittal, the court indicated that it had been prepared to grant an acquittal on count three until the victim's cross-examination, during which the victim "said enough that I'm denying your motion for JOA."  (Dkt. 7, Ex. A4, p. 552.)  Although this portion of the claim was not expressly addressed in the postconviction order, it is presumed to be denied.  *See Richter*, 562 U.S. at 99.  Moreover, Griffin shows no prejudice as result of counsel's cross-examination of the victim with respect to count three, as the jury found

---

[17] In his postconviction motion, Griffin only made reference to *Oliver*, 977 So.2d 673,  upon which the State relied in opposing the motion for judgment of acquittal.  (Dkt. 7, Ex. C1, pp. 8-10.)  In the memorandum of law filed in support of his postconviction motion, Griffin cited *McLean v. State*, 934 So. 2d 1248, 1256 n.6 (Fla. 2006); *Hallberg v. State*, 649 So.2d 1355 (Fla. 1994); *State v. Rawls*, 649 So.2d 1350, 1353 (Fla. 1994); *Hamilton v. State*, 979 So.2d 420, 422 (Fla. 2d DCA 2008); *Parker v. State*, 993 So.2d 987 (Fla. 2d DCA 2007); and *Boykin v. State*, 725 So.2d 1203 (Fla. 2d DCA 1999).  (Dkt. 7, Ex. C2, pp. 11-13.)  The state court noted that these decisions do not support Griffin's assertion that he was not in a position of familial or custodial authority over the victim under the circumstances of this case.

him not guilty on this count.

Accordingly, Griffin does not show that the state court's rejection of his claim was an unreasonable application of clearly established federal law, or was based on an unreasonable determination of the facts. Ground Ten warrants no relief.

**Ground Eleven**

The victim gave birth to a baby prior to trial. DNA tests confirmed that Griffin was not the baby's father. Griffin argues that counsel was ineffective for failing to prepare and argue in favor of admitting evidence regarding the victim's pregnancy and alleged promiscuity. Specifically, Griffin contends that counsel "did nothing to argue for this evidence to be admitted, specifically under Florida Statutes § 90.4025 (evidence code) that would allow evidence of paternity of a child born to a victim of sexual battery, who is under 18 as being admissible in a criminal prosecution." (Dkt. 1, p. 18.) He claims that such evidence "would have exculpated Petitioner[']s position" because "the jury was left to believe that the alleged victim was chaste thereby lending more credibility to her testimony." (*Id.*)

Before trial, the court considered counsel's request to introduce evidence of the baby's paternity. Counsel asserted that this was relevant to the victim's credibility and potential motive in testifying. (Dkt. 7, Ex. A4, pp. 30-33, 36.) Counsel further argued that Griffin was entitled under the Confrontation Clause to question the victim about this information in presenting his defense. (*Id.*) In ruling against Griffin, the trial court made clear that it considered evidence of the baby's paternity to be inadmissible at trial because it was irrelevant to the charges and barred by Florida's rape shield law to the extent it merely suggested the victim engaged in sexual activity with someone other than Griffin.

(Dkt. 7, Ex. A4, pp. 25, 31-37.)

The postconviction court rejected Griffin's claim of ineffective assistance of trial counsel:

> In claim 5, Defendant argues that trial counsel should have argued, and preserved for appeal, the Court's ruling that Defendant could not show that the victim was promiscuous or that she had given birth to a child that was not Defendant's. The record indicates that trial counsel did argue that such facts should be admissible during a hearing on a Motion in Limine held before jury selection. The Court ruled against counsel and the issue was preserved for appeal. Trial counsel cannot be said to be deficient in her performance and Defendant cannot establish prejudice. **Claim 5 is DENIED**.

(Dkt. 7, Ex. C3) (court's record citation omitted) (emphasis in original).

As addressed, counsel argued that the evidence of paternity was admissible for the same reasons Griffin now sets forth. While counsel did not specifically cite § 90.4025, Fla. Stat., she presented extensive argument in support of admitting this evidence. But the trial court rejected all of the arguments advanced by counsel. Griffin does not establish that counsel was deficient in not citing this statute, or that there is a reasonable probability the outcome of the proceedings would have been different had she done so. Finally, Griffin's claim that he was prejudiced in that the jury believed the victim was "chaste" and therefore credible is entirely speculative, and unsupported by any evidence.[18] Such an argument cannot sustain a claim of ineffective assistance of counsel. *See Tejada*, 941 F.2d at 1559.

Griffin does not establish either prong of *Strickland*. Therefore, he does not show that the state court's rejection of this claim was an unreasonable application of clearly

---

[18] This aspect of the claim was not properly presented to the state court and is procedurally defaulted. (Dkt. 7, Ex. C1, pp. 10-11; Ex. C2, pp. 13-15.) *See Anderson*, 459 U.S. at 6; *Weeks*, 26 F.3d at 1044-46. Griffin does not establish the applicability of an exception to overcome the procedural default of the claim. *See Smith*, 256 F.3d at 1138. Notwithstanding, it provides no relief.

established federal law, or based on an unreasonable determination of the facts.  Griffin

is not entitled to relief on Ground Eleven.

**Ground Twelve**

Griffin claims that counsel was ineffective for misadvising him not to testify at trial.

He claims that his testimony would have "rebutted" alleged inconsistencies in the victim's

testimony because he would have "explained to the jury that the acts described by the

alleged victim did not happen."  (Dkt. 1, p. 19.)  Griffin further asserts that he wished to

testify but that counsel advised him not to "because he lacked the acumen to fend off the

accusatory questioning by the State Prosecutor, regardless of the fact that the Petitioner

had no prior record and had never before been accused of a crime involving sexual

immorality."  (*Id.*)  He claims that counsel should have "allowed" him to testify and should

have asked him questions that would have revealed that he had no prior criminal record.

(*Id.*)  Furthermore, Griffin claimed in his amended postconviction motion that, had he

testified, he would have explained "his statements to police at the stationhouse as 'tell them

what they want to hear' where all Griffin was concerned with was getting out of there so he

could get to work."  (Dkt. 7, Ex. C4, pp. 5, 6.)[19]

In rejecting this claim, the state court stated that, "After review of the State's

arguments, citations, and attachments to its Response, adopted and incorporated herein,

the Court agrees."  The State's response provides:

---

[19] Griffin, a truck driver, was scheduled to leave for a trip the same day he was detained and
interviewed by police.  In arguing that his statement was involuntary, counsel emphasized in closing
arguments that the police did not tell Griffin until the end of the interview he was going to jail, and at least
suggested that Griffin's focus in the interview was simply being able to leave for work. (Dkt. 7, Ex. A4, p. 645.)
Robbins' testimony reflects that, during the interview, Griffin was concerned with being late for work, and that
at some point he expressed worry about losing his job.  (*Id.*, pp. 481, 529.)

This Honorable Court has ordered response as to Defendant's sixth claim of error, that trial counsel . . . rendered ineffective assistance by advising Defendant not to testify in his own behalf at the trial of this cause. . . . The Record affirmatively refutes this claim, as set forth in *Gonzalez v. State*, 990 So.2d 1017, 1031 (Fla. 2008) and *Oisorio v. State*, 676 So.2d 1363, 1364 (Fla. 1996).  This claim should be denied.

In *Gonzalez*, 990 So.2d at 1031, that defendant claimed that trial counsel rendered ineffective assistance within the meaning of *Strickland v. Washington*, 466 U.S. 668 (1984) by interfering with his right to testify.  The Florida Supreme Court held that where the trial judge on the record engages a defendant in a colloquy that establishes that defendant "knowingly, voluntarily, and intelligently waived his right to testify, and that it was his personal decision," then a claim of interference with the right to testify may be denied.  990 So.2d at 1031.  Gonzalez understood that he had the right to testify regardless of his counsel's advice, that it was his personal decision, no promises were made to him, and he was not forced to testify.  *Id.*  The supreme court held that even Gonzalez' history of below-average intelligence and brain damage did not "equate to a lack of voluntariness," and denied the collateral motion.  *Id.* at 1032.

In *Oisorio*, 676 So.2d at 1364, the landmark Florida case for this type of claim, a convicted drug trafficker made similar protests that his right to testify was interfered with.  There, the high court held that consistent with *Strickland*, a defendant raising such a claim must demonstrate that trial counsel rendered deficient performance in advising the client not to testify, and that outcome-determinative prejudice resulted.  676 So.2d at 1364.  Cases such as *Gonzalez* construe *Strickland* prejudice for purposes of awarding an evidentiary hearing to take place where the record does not show that defendant voluntarily chose not to testify.

In this case, the record shows that the Trial Court, Tenth Circuit Judge, the Honorable Beth Harlan, engaged the Defendant in the colloquy that *Gonzalez* recommends. . . . The Trial Court advised Defendant that

> The Court:  You understand that you're giving up your - - you not only are exercising an important Constitutional right, but you're also giving up a right.  Do you understand that?
>
> [Defendant]:  [Nodding head.]
>
> . . .
>
> The Court:  I am going to charge the jury that they are not to take anything from your failure to testify - - that they are not to assume anything, that it's the state's burden to prove that you're guilty beyond

a reasonable doubt, and that they are not to assume anything because of your failure to testify.  You understand that?

[Defendant]:  Yes, your honor.

The Court:  But you're also giving up that right to sit in that box and tell your story.  You understand that?

[Defendant]:  Yes, ma'am.

The Court:  And are you comfortable with that decision?

[Defendant]:  Yes, ma'am.

The Court:  I try to avoid asking if you and your attorney agree because in my opinion, that gets into the attorney-client privilege, but you and your attorney have discussed it and you, [Defendant], feel comfortable in your decision not to testify?

[Defendant]:  Yes, ma'am.

*Trial Transcript* at 559-60.  Here, the Trial Court's colloquy establishes that Defendant "knowingly, voluntarily, and intelligently waived his right to testify, and that it was his personal decision," and his claim therefore should be denied.  *Gonzalez*, 990 So.2d at 1031.

(Dkt. 7, Ex. C7) (alterations in original).

The record supports the state court's determination that Griffin knowingly chose not to testify upon consulting with counsel.  (Dkt. 7, Ex. A4, pp. 559-60.)  To the extent that Griffin alleges counsel did not permit or allow him to testify, therefore, the state court record clearly supports the rejection of his claim.

Furthermore, Griffin fails to establish entitlement to relief on his argument that counsel performed deficiently in advising him not to testify.  Testifying would have exposed Griffin to cross-examination, during which the State could have impeached his testimony with his incriminating statements to the police and further highlighted these statements

before the jury.  Additionally, counsel was able to present numerous points in closing argument even without Griffin's testimony.  She argued that the victim was not credible and that her testimony contained incorrect information and inconsistencies and showed she was confused about what acts constituted sex; that there was a lack of physical evidence to support the charges; that Griffin's letters contained no admission of sexual acts; that Griffin's statement to police should be discounted because it was not voluntary; and that the State failed to show Griffin was in a position of familial or custodial authority over the victim.  (*Id.*, pp. 616-53.)

Moreover, given the significant evidence of guilt presented through testimony of the victim and Detective Robbins, Griffin fails to establish a reasonable probability that his proposed testimony would have changed the outcome of trial.  Accordingly, Griffin fails to meet either prong of *Strickland*.  Therefore, he fails to show that the state court's decision was contrary to or an unreasonable application of clearly established federal law, or was based on an unreasonable determination of the facts.  Ground Twelve warrants no relief.

Any claims not specifically addressed in this Order have been determined to be without merit.  It is therefore **ORDERED** that Griffin's petition for writ of habeas corpus (Dkt. 1) is **DENIED**.  The Clerk is directed to enter judgment against Griffin and to close this case.

It is further **ORDERED** that Griffin is not entitled to a certificate of appealability.  A petitioner does not have absolute entitlement to appeal a district court's denial of his habeas petition.  28 U.S.C. § 2253(c)(1).  A district court must first issue a certificate of appealability (COA).  *Ia.*  "A [COA] may issue . . . only if the applicant has made a

substantial showing of the denial of a constitutional right." *Id*. at § 2253(c)(2).  To make such a showing, Griffin "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennara v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-Ei v. Cockreli*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)).  Griffin has not made this showing.  Finally, because Griffin is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

   **DONE AND ORDERED** in Tampa, Florida, on September 21, 2016.

Charlene Edwards Honeywell
United States District Judge

Copy to:
Richard Lee Griffin
Counsel of Record